UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
BOBBIE KIDD,

                Plaintiffs,

   -against-

DEAN SCHMIDT, CORRECTION OFFICER OF THE
DEPARTMENT OF CORRECTIONAL SERVICES
("DOCS") ANGINELL ANDREWS OF ALBION
CORRECTIONAL FACILITY; GREGORY SAJ,
DEPUTY SUPERINTENDENT OF SECURITY OF         FIRST AMENDED
ALBION CORRECTIONAL FACILITY, DOCS               COMPLAINT
INSPECTOR GENERAL RICHARD ROY; DOCS
DIRECTOR OF THE SEX CRIMES UNIT OF THE         JURY TRIAL DEMANDED
INSPECTOR GENERAL'S OFFICE BARBARA D.
LEON, DOCS DIRECTOR OF THE BUREAU OF         02-CV-6424 (DGL-JWF)
LABOR RELATIONS PETER BROWN; and DOCS
COMMISSIONER GLENN S. GOORD,

                Defendants.
------------------------------------------------------------------- x

Plaintiff Bobbie Kidd, by her attorneys, Falk and Klebanoff, P.C. and Ivar Goldart, of counsel, as and for her First Amended Complaint against the defendants, states as follows:

## PRELIMINARY STATEMENT

Plaintiff is a woman presently confined in the custody of the New York State Department of Correctional Services ("DOCS") at the Taconic Correctional Facility and was incarcerated in the Albion Correctional Facility when she was forcibly raped by defendant Schmidt on August 9, 2001. Defendant Schmidt was an officer at Albion working in plaintiff's housing area on the day he raped and impregnated her. A default judgment was been filed against defendant Schmidt pursuant to decision by Hon. David

G. Larimer on October 14, 2004. The default related to counts one through eight in the original complaint and those counts are repeated in the Proposed First Amended Complaint. The remaining defendants are and were managerial personnel of DOCS ("managerial defendants") who knew or should have known about Schmidt's predatory behavior towards female prisoners or had reason to believe that he should not have had unmonitored access to female prisoners but who failed to act to keep plaintiff free from harm at the hands of Schmidt. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 for money damages, to redress defendants' violations of her rights under the First, Fourth, Eighth and Fourteenth Amendments of the United States Constitution.

Each paragraph in this complaint incorporates, repeats and realleges every other paragraph in this complaint.

### JURISDICTION PROCEDURAL REQUIREMENTS AND VENUE

1. This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

2. This Court has supplemental jurisdiction over Plaintiff's State law claims and all other claims and parties not covered under paragraph 2 pursuant to 28 U.S.C. §1367 in that said claims and parties are so related to the jurisdiction conferring claims that they form part of the same case and controversy.

3. Venue is proper in this district under 28 U.S.C. § 1391(b).

4. Plaintiff demands a jury trial of her claims alleged in this complaint pursuant to Fed. Rules Civ. Pro. §38(b)

## PARTIES

5. Plaintiff Bobbie Kidd is a prisoner in DOCS custody and was so at all times referred to in this complaint.

6. The defendant Dean Schmidt was at all times referred to in this complaint a correctional officer employed by the Department of Correctional Services, assigned to Albion, a DOCS-operated women's prison. At all times mentioned in this complaint he was acting under color of State law. He is sued in his individual capacity. He forcibly sodomized, raped and impregnated plaintiff on or about August 9, 2001.

7. Defendant Anginell Andrews at all times hereinafter mentioned was the Superintendent of Albion, and as such she is responsible for the assignment and removal of staff; the training of staff; the supervision of staff and inmates to ensure a safe environment, including the enforcement of DOCS rules and regulations; the investigation of complaints of sexual misconduct by staff, including the decision whether to forward complaints to higher-ranking DOCS officials and to the Inspector General's office; the investigation of and response to complaints of misconduct against staff, in conjunction with the Inspector General's Office and for the failure to protect plaintiff from sexual harassment and abuse from defendant Schmidt. At all times mentioned in this complaint he was acting under color of State law. At all times mentioned in this complaint she was acting under color of State law. She is sued in her individual capacity.

8. Defendant Gregory Saj, at all times hereinafter mentioned was Deputy Superintendent of Security at Albion Correctional Facility, and as such maintains supervision of security and staff at Albion, including but not limited to the Captains,

3

sergeants and line officers. At all times mentioned in this complaint he was acting under color of State law. At all times mentioned in this complaint he was acting under color of State law. He is sued in his individual capacity.

9. Defendant Richard Roy is the Inspector General of the New York State Department of Correctional Services. He is responsible for the investigation of complaints of criminal misconduct or violation of Departmental rules by DOCS employees, including complaints of sexual harassment and abuse; for determining the standards by which such complaints are assessed; for reviewing all investigations of such complaints; for determining whether such complaints are substantiated; and for recommending whether or not action be taken, including referrals to the Bureau of Labor Relations for disciplinary action against staff and referrals of allegations of criminal misconduct to law enforcement officials. He failed to take appropriate action against defendant Schmidt to prevent him from harming plaintiff although he knew or had reason to believe that defendant Schmidt had engaged in sexual relations with a female prisoner in the past. At all times mentioned in this complaint he was acting under color of State law. He is sued in his individual capacity.

10. Defendant Barbara D. Leon is the director of the Sex Crimes Unit of the DOCS Inspector General's Office. She is responsible for staff training as it applies to sexual misconduct between inmates and prison staff, the investigation of complaints of criminal or Departmental misconduct by DOCS employees, and specifically complaints of sexual harassment and abuse; for determining the standards by which such complaints are assessed; for reviewing all investigations of such complaints; for determining whether

4

such complaints are substantiated; and for recommending whether or not action be taken, including referrals to the Bureau of Labor Relations for disciplinary action against staff and referrals of allegations of criminal misconduct to law enforcement officials. She failed to take appropriate action against defendant Schmidt to prevent him from harming plaintiff although she knew or had reason to believe that defendant Schmidt had engaged in sexual relations with a female prisoner in the past. At all times mentioned in this complaint she was acting under color of State law. She is sued in her individual capacity.

11. Defendant Peter Brown is the Director of the Bureau of Labor Relations of DOCS. Based on the discovery provided to date, he is responsible for deciding whether to pursue disciplinary actions against Departmental staff who are alleged to have violated Departmental rules and regulations, including the commission of acts of sexual misconduct. He failed to take appropriate action against defendant Schmidt to prevent him from harming plaintiff although he knew or had reason to believe or should have known that defendant Schmidt had engaged in sexual relations with a female prisoner in the past. In addition, the procedures he helped established for the investigation, discipline and actions that may be taken with respect to officers accused of sexual misconduct with inmates have served to create an environment where such misconduct has flourished. At all times mentioned in this complaint he was acting under color of State law. He is sued in his individual capacity.

12. Defendant Glenn S. Goord is the Commissioner of the New York State Department of Correctional Services. He is responsible for the care, custody and control of all inmates housed in DOCS facilities. He is responsible for the management and

control of Albion, and for all matters relating to the selection, training, assignment, placement, promotion, and discipline of the uniformed staff of that prison. He is responsible, along with the Inspector General, for the system of complaint and investigation of staff misconduct, including sexual harassment and abuse, and for setting the standards by which such complaints are reviewed to determine the actions, if any, to be taken against staff. He is responsible for the policies and practices that resulted in the deprivation of plaintiffs' rights under federal law and has failed to take necessary and appropriate actions to prevent such deprivations. He failed to take appropriate action against defendant Schmidt to prevent him from harming plaintiff although he knew or had reason to believe that defendant Schmidt had engaged in sexual relations and misconduct with a female prisoner in the past. At all times mentioned in this complaint he was acting under color of State law. He is sued in his individual capacity.

## FACTUAL ALLEGATIONS

13. On or about August 9, 2001, Plaintiff was raped, sodomized and impregnated by defendant Schmidt at Albion where she was confined as an inmate.

14. No later than 1996, many, if not all, of defendants were directly aware that defendant Schmidt engaged in sexual misconduct with a female inmate.

15. Specifically, in April 1996, Amy Fisher reported to defendant Leon that she had been raped and sodomized by defendant Schmidt.

16. Prior to Fisher meeting with defendant Leon, her complaint came to the attention of defendant Andrews.

17. In 1996, Fisher and her mother, Rosanne Fisher brought a claim under 42 U.S.C. § 1983 and other claims that sought damages and injunctive relief alleging among other things that Amy Fisher was being sexually abused by a number of Albion staff including Schmidt.

18. In that action, defendants Andrews, Goord and Schmidt were named defendants.

19. On information and belief, defendants Goord and Roy participated in discussions with Rosanne Fisher concerning the allegations about Schmidt.

20. The Fishers moved for injunctive relief seeking the Amy Fisher's removal from Albion. The Fishers lost that application and abandoned the case after an agreement was reached removing Fisher from Albion. The allegations by Fisher were made at a time when the law of New York State did not render inmates of being incapable of consenting to sexual relations with prison personnel.

21. In the decision denying the preliminary injunction to transfer Fisher from Albion the Hon. Richard J. Arcara found that "all was not right at Albion." Fisher v. Goord, 981 F.Supp. 140, 176 (W.D.N.Y. 1997). The Court found credible the testimony of Lillian Nieves, an inmate witness called by the State, who testified that voluntary sexual interactions between inmates and officers are "common" at Albion, male officers grope inmates while frisking them and that drugs flow freely into Albion. Id.

22. The decision reports that Nieves testified that Fisher confided in her the plan to have sex with Schmidt and call it rape. (Id. at 157) She further testified that after Fisher returned from a meeting with Schmidt, Fisher was angry and stated that she had

had sex with Schmidt but was unable to obtain semen from encounter. (Id at 157) Nieves had expressed her disdain for the plan and stated that Schmidt was "disgusting." (Id)

23. The Fisher decision does not specifically reference a denial by Schmidt of the allegations of sexual misconduct made against him.

24. The discovery provided to date covering 1995 through 2001 does not reflect that Fisher's allegations concerning Schmidt were the subject of an investigation by the DOCS Inspector General's office.

25. On information and belief based upon what has been disclosed in initial discovery about Schmidt's reported misconduct before he raped Bobbie Kidd is as follows:

    a. On January 16, 2001, defendant Andrews received a series of letters from inmates dated January 13, 2001, reporting that defendant Schmidt propositioned two inmates and insulted others. The complaints indicated that he had offered one inmate a sum of money for sex and had told another that he would take care of her sexually and financially. On January 22, 2001, DOCs Inspector General obtained the complaints by mail from Defendant Andrews. On February 20, 2001 an investigator from defendant Leon's SCU was assigned to investigate. A month later, the assigned investigator Brimmer began interviewing the inmates involved. The reports produced by the defendants do not identify the inmates by name. One inmate reported that defendant Andrews had come to her unit and did not raise the matter with any inmates or the Sergeant. One inmate

who had been propositioned reported that "Schmidt has been doing this stuff for a long time and has never been caught... ."

   b.   Defendant Leon reviewed the progress of this investigation after each round of interviews and prior to it being reassigned to another investigator, Williams, on May 31, 2001.

   c.   On January 13, 2001, defendant Schmidt was part of a group of "Resource" officers assigned to cover posts of other officers on vacation, sick leave or other reason, between the hours of 3:00 P.M. to 11:00 P.M. He had the same tour of duty on August 9, 2001 when he raped plaintiff.

   d.   An inmate informed investigator Williams (SCU) that in April of 2000 defendant Schmidt had been assigned the task of scanning inmates for contraband who returning to a housing area. Schmidt declined to use the scanning wand and instead groped the vaginal and chest areas of many inmates. On information and belief such check points are not attended by a single officer.

   e.   In 1995, an investigation concerning allegations of racial slurs uttered by Schmidt was investigated by defendant Leon. No further details of this matter, including whether it was open or closed as of the day of the rape of plaintiff, has been disclosed other than a case number (42/95).

   f.   In 1997, under case number 229/97, Schmidt was investigated for alleged sexual harassment. No further details of this matter, including whether it was open or closed as of the day of the rape of plaintiff, have been provided.

g. In 1997, under case number 236/97, Schmidt was investigated for alleged sexual harassment. The case was opened by SCU on September 23, 1997 and marked closed after being open for 1195 days. No other details have been provided. The case remained open until on or about January 2001 when the allegations concerning Schmidt propositioning inmates (SCU 01/002) referenced in (b) above was initiated.

26. On information and belief defendants failed to prevent defendant Schmidt from having unmonitored access to female prisoners, including plaintiff Bobbie Kidd, even though he had engaged in many instances of sexual misconduct with inmates.

27. Defendant Schmidt's tour of duty on August 9, 2001 allowed him to have unmonitored access to plaintiff's cell after she had taken a shower where he forcibly sodomized and raped her.

28. Managerial defendants did not have Schmidt's "resource" tour changed and/or limit the posts he was able to take on so as to minimize contacts with inmates or to have him monitored in his ever changing day to day assignments so as to protect inmates including plaintiff from his having unmonitored access to them.

29. In not limiting Schmidt's unmonitored access to plaintiff, the managerial defendants failed in their responsibility for the care, custody and control of plaintiff, and, through their acts and omissions, these defendants allowed Schmidt to have access to plaintiff and permitted him to continue his sexual misconduct with inmates and the abuse of plaintiff.

30. Despite the incidence of sexual misconduct by Schmidt, these defendants, through their policies and practices, have recklessly disregarded these risks, and failed to protect plaintiff from harm.

31. Defendants failed to screen Schmidt for continued employment in a female institution so as to prevent his continued sexual misconduct. On information and belief, despite notice of a persistent pattern of repeated and corroborated instances of sexual misconduct defendants failed to use such particularized training or evaluative devices at any time in connection with Schmidt's continued assignments in a women's prison.

32. The defendant's creation and reliance upon a system of "substantiating" allegations of sexual misconduct by Schmidt that requires them to meet a burden of proof requiring evidence such as DNA identification as the threshold for engaging in any effort to protect inmates from a sexual preditor, allowed Schmidt to continue his sexual exploits in Albion until it was conclusively established that he impregnated plaintiff.

### FIRST CAUSE OF ACTION

33. At the aforesaid times and places, defendant Schmidt without consent or provocation, maliciously threatened, intimidated, harassed, assaulted, abused, molested, sodomized, raped and impregnated plaintiff Bobbie Kidd.

34. By reason of the said attacks by defendant Schmidt, plaintiff Bobbie Kidd sustained serious bodily and psychological injuries with accompanying pain and suffering and mental distress. Some of said injuries may be permanent.

35.  For violation of her right to be free from malicious threats, intimidation, harassment, assault, sodomy, rape and impregnation and sexual assaults, plaintiff Bobbie Kidd seeks compensatory and punitive damages against the defendant Schmidt in amounts to be determined.

## SECOND CAUSE OF ACTION

36.  Managerial defendants, through their policies, practices, acts and omissions, exhibit deliberate indifference to the sexual harassment and abuse of the plaintiff, in violation of her right be free from cruel and unusual punishment under the Eighth Amendment of the United States Constitution.

37.  Managerial defendants, through their policies, practices, acts and omissions, subjected the plaintiff to the unnecessary and wanton infliction of pain, and emotional and physical injury in violation of the Eighth Amendment of the United States Constitution.

38.  With deliberate indifference to the substantial risk of serious harm to the plaintiff, defendants failed to train, assign, and supervise Schmidt, subjecting the plaintiff class to sexual abuse and harassment by Schmidt, to verbal abuse, and to violations of privacy in violation of the Eighth Amendment of the United States Constitution.

39.  With deliberate indifference to the substantial risk of serious harm to the plaintiff, defendants failed to effectively investigate and act upon complaints of sexual misconduct, subjecting the plaintiff to sexual abuse and harassment by Schmidt, to verbal

abuse, and to violations of privacy in violation of the Eighth Amendment of the United States Constitution.

40. With deliberate indifference to the substantial risk of serious harm to the plaintiff, supervisory defendants failed to offer and provide adequate mental health treatment to plaintiff, subjecting the plaintiff to serious emotional and mental injury in violation of the Eighth Amendment of the United States Constitution.

41. For violation of her right to be free from cruel and unusual punishment, sexual assaults, plaintiff Bobbie Kidd seeks compensatory and punitive damages against the defendant Schmidt in amounts to be determined.

42. For violation of her right to be free from cruel and unusual punishment, sexual assaults, plaintiff Bobbie Kidd seeks compensatory and punitive damages against the defendant Andrews in amounts to be determined.

43. For violation of her right to be free from cruel and unusual punishment, sexual assaults, plaintiff Bobbie Kidd seeks compensatory and punitive damages against the defendant Gregory Saj in amounts to be determined.

44. For violation of her right to be free from cruel and unusual punishment, sexual assaults, plaintiff Bobbie Kidd seeks compensatory and punitive damages against the defendant Richard Roy in amounts to be determined.

45. For violation of her right to be free from cruel and unusual punishment, sexual assaults, plaintiff Bobbie Kidd seeks compensatory and punitive damages against the defendant Barbera D. Leon in amounts to be determined.

46. For violation of her right to be free from cruel and unusual punishment, sexual assaults, plaintiff Bobbie Kidd seeks compensatory and punitive damages against the defendant Peter Brown in amounts to be determined.

47. For violation of her right to be free from cruel and unusual punishment, sexual assaults, plaintiff Bobbie Kidd seeks compensatory and punitive damages against the defendant Glen S. Goord in amounts to be determined.

### THIRD CAUSE OF ACTION

48. By their policies, practices, acts and omissions, deliberate indifference, managerial defendants other than Schmidt, deprived the plaintiff of her right to be free from sexual abuse and harassment and of her rights to bodily integrity and privacy, without due process of law, in violation of the Fourth, Fifth and Fourteenth Amendments of the United States Constitution.

49. As a result of the of the foregoing plaintiff seeks compensatory and punitive damages against each managerial defendant.

### **PRAYER FOR RELIEF**

As a result of defendants' policies, practices and acts, plaintiff has suffered and will continue to suffer irreparable injury.

**WHEREFORE,** Plaintiff requests the following relief:

A. Compensatory damages in an amount to be determined;

B.  Punitive damages as against each and all defendant in an amount to be determined;

C.  Reasonable attorney fees, expert witness fees and costs; and

D.  Such other and further relief as appears reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Dated: October  , 2005
West Hempstead, New York

_____
IVAR GOLDART (IG-8489)
Of Counsel
Falk & Klebanoff, P.C.
392 Woodfield Road
West Hempstead, NY 11532
516-564-4200

15

Case 6:02-cv-06424-DGL-JWF   Document 72   Filed 11/15/05   Page 16 of 16